No. 20.—CARLETON WELLBORN and JAMES DUNCAN, plaintiffs in error, *vs.* THOMAS WILLIAMS *et al.* defendants.

[1.] The lien of the vendor for the purchase money will not be enforced in favor of the assignee of the notes given therefor.

In Equity, in Houston Superior Court. Decided by Judge STARK, April Term, 1850.

This was a bill filed by the complainants, to enforce a vendor's lien.

The bill alleges, that in the year 1838, one John Martin sold to T. and S. Williams a lot of land in the County of Houston, who executed to the said Martin their two promissory notes for seven hundred dollars each, as a part of the purchase price therefor. One of the notes was made payable on the 25th day of December, 1838; the other, twelve months thereafter. Martin subsequently obtained judgment against T. and S. Williams on the first of said notes, upon which execution issued.

The bill alleges that afterwards, for a a valuable consideration, Martin assigned and transferred to complainants the said judgment and execution, and also transferred to them the other note, on which they afterwards obtained judgment; that the execution in favor of Martin had been levied upon the land.

The bill alleges that T. & S. Williams, in a short time after the sale of said land, became insolvent, and have ever since been unable to pay their debts. The bill further alleges, that Wiley, Parish & Co. and a number of other creditors, had obtained judgments against T. & S. Williams, which were of older date than complainants', but that the most of the notes, upon which said judgments were predicated, were made previous to the sale of the land. The prayer of the bill was, that the land sold by Martin to T. & S. Williams, or the proceeds thereof might, by decree, be declared to be subject to the claims of complainant, in preference to the judgments of other creditors, and they perpetually enjoined from levying upon said

land or claiming the proceeds thereof, when sold, until the claims of complainants are discharged.

To this bill, the defendants filed a demurrer on several grounds.

The Court sustained the demurrer on the ground that the transfer and assignment of the note and judgment, the evidence of the purchase price of the land in complainant's bill mentioned, without any assignment or contract for the assignment of the vendor's lien, does not carry with said transfer of said note and judgment the vendor's lien, so as to enable the assignee to set up the same and dismissed the bill.

To which decision of the Court counsel for complainants excepted.

ROGERS, POWERS and GILES for plaintiff in error.

HINES, KILLEN and POWERS & WHITTLE for defendants in error.

*By the Court*—NISBET, J. delivering the opinion.

[1.] The judgment of this Court is invoked to extend the vendor's lien for the purchase money to the assignee of the note given for the purchase money.

This was a naked assignment by the vendor of one of the notes of the vendee, given for the purchase money, and of a judgment founded on the other note—there being two. There was no indorsement or undertaking to be liable, of any kind, on the part of the vendor, and no contract or agreement by which the lien was assigned. The question is, whether, upon a naked assignment of the notes of the vendee, the lien of the vendor attaches to the notes in the hands of the assignee. Upon principle and authority, our judgment is, that it does not.

I admit that a contrary idea is sustained by some of the analogies of the law. Generally, for example, the *incidents* follow the *principal*. The transfer of a note, secured by a mortgage, carries with it the mortgage security. But the vendor's lien is peculiar; it is *sui generis,* and distinguished from those things

to which it bears some resemblance. Mr. J. *Story* and Lord *Elden* trace it to the Civil Law. By the Roman Law, the vendor of property had a privilege or right of priority of payment, in the nature of a lien on the property for the price for which it sold, not only against the vendee and his representatives, but against his creditors and subsequent purchasers. It was a rule of that law, that although the sale passed the title of the thing sold, yet it implied a condition that the vendee should not be master of the thing sold, unless he had paid the price, or had otherwise satisfied the vendor in regard to it, or unless a personal credit was given to him without satisfaction. " *Quod vendide non aliter fit accipientes quam si aut pretium nobis solutum sit, aut satis eo nomine factum; vel etiam fidem habuerimus emptori sine cellæ satisfactione.* " No such privilege or lien exists by the Common Law. The Courts of Equity, impressed, no doubt, with the justice of the rule, established what we call the vendor's lien. That lien does not exist by virtue of the Civil Law. Although the idea of it was thence derived, yet it is the creature of the Courts of Equity; and it is of force according as it is regarded by those Courts. The foundation of it is the strong naturally equitable proposition, that he who has gotten the estate of another ought not to retain it without paying the full consideration money. This principle is made available by holding the vendee a trustee for the vendor, to the extent of the purchase money, of the land sold to him. Such is a brief statement of the origin of the vendor's lien. 2 *Story's Eq. Jurisp.* §§1217 *to* 1223. *Mackreth vs. Symmons,* 15 *Vesey,* 340. 1 *Mason's Rep.* 190.

This lien may be enforced, not only against the vendee and his heirs, but against purchasers claiming under him, with notice of the vendor's equity. 2 *Story's Eq. Jurisp.* §1217. It is not so well settled how far it is good against creditors. Ch. J. *Marshall,* in *Bailey vs. Greenleaf,* says, that there is not a case to be found in the American books which sustains it against creditors. That case decides that it cannot be sustained against creditors holding under a *bona fide* conveyance from the vendee, and this decision meets the approval of Ch. *Kent.* 6 *Wheat. R.* 46. 4 *Kent's Com.* 154, *note.* The decision of the Supreme Court has been

Wellborn and Duncan *vs.* Williams and others.

controverted elsewhere.   See *note* 6, *Kent's Com.* 154.   I do not enter into this enquiry.   It is good against the assignees in bankruptcy of the vendee.   They come in by operation of law, pay no value, and occupy the position of the vendee.   2 *Sugden's Vendors*, 141. 1 *B. Ch. R.* 420. 6 *Vesey, Jr.* 95, *n. a.* 12 *Ibid*, 346.   It survives to the personal representatives of the vendor.   *Story's Eq. Jurisp.* §1217.   There are instances where it is enforced in favor of third persons.   For example, it may be enforced by marshaling the assets of the vendee in favor of legatees and creditors, and giving them the benefit of it by way of substitution to the vendor, when he seeks payment out of the personal assets of the vendee.   *Story's Eq. Juris.* §1227. *Sugden on Vendors*, *ch.* 12, *p.* 549 *to* 556, 7 *edit.*   *Selly vs. Selly*, 4 *Russ. R.* 336.   *Mackreth vs. Symmons*, 15 *Vesey*, 340.  9 *Vesey*, 209.   This is well settled, although at one time doubted. So, if a subsequent incumbrancer or purchaser from the vendee is compelled to pay the lien of the vendor, he is entitled to be substituted to his place against other claimants under the vendor against the estate, and to have the assets marshaled in his favor. *Malone vs. Bale*, 2 *Vern.* 84.   2 *Story's Eq. Jurisp.* §1227.

I do not find in the English books a single case in which it has been enforced in favor of the assignee of the note for the purchase money.   An enquiry into the character of the vendor's lien will show, that upon principle, it cannot be done.   As a general rule, third persons have no interest in it.   The two instances above stated, where it has been enforced in favor of third persons, were relied upon to sustain its extension to the assignee of the notes.   When I come again to examine them, it will be seen that they go upon very different principles.   We have seen that this is an equitable lien in the nature of a trust.   The trust in favor of the vendor is implied, and thus it steers clear of the Statute of frauds.   It is really difficult to determine, from the language of the books, upon what principles the Courts of Equity have gone in establishing this lien.   It is sometimes spoken of as a natural equity, recognized by the laws of all civilized States, which Courts of Equity, acting upon the conscience of the parties, will enforce ; and aside from the idea of trust, that Court has

arbitrarily declared it a rule or doctrine in Chancery. To recon-
cile the *doctrine* to general principles, and particularly to avoid
the intervention of the Statute of Frauds, the invocation of a
trust by implication is made. Hence, it is called a lien in the na-
ture of a trust. It is also assimilated to an equitable mortgage,
and is frequently so called. It is also spoken of as an implied
contract growing out of the transaction of sale, by which it is
agreed that the vendor shall have this security for his pur-
chase money. The latter idea is repudiated by Mr. *Story.* He
says, " Although in some cases it might be perfectly reasonable
to presume such a consent or agreement, the lien is not, strict-
ly speaking, attributable to it, but stands independently of any
such supposed agreement. " *Story's Eq. Jurisp.* §1220. It
has been traced, as before stated, to the Roman Law. That
Law placed it upon the ground of a natural equity. " *Tamen
recti dicitar et jure gentium id est, jure naturali, id effeci.* " *Just.
Lib.* 2, *tit.* 1, §49. "Therefore," says Mr. *Story,* " when Courts of
Equity established this lien, as a matter of doctrine, it had the
effect of a contract, and the lien was held to prevail, although
perhaps no actual contract had taken place. " *Story's Eq. Ju-
risp.* §1229. Thus we see that this great commentator could call it
nothing more than a *matter of doctrine* established by the Courts of
Equity, upon the basis of natural justice, which, in the absence of
a contract, had the effect of a contract. By *matter of doctrine,* I
suppose, must be meant an arbitrary rule or law of the Courts of
Chancery, to which is arbitrarily given by that Court the force
and effect of a contract, because it is an arbitrary rule, it is but
rarely attempted to make it harmonize with general principles.
It stands the legislation of the Courts of Chancery. As such, we
have received it by our Adopting Statute. Being the creature of
that Court, it is to be enforced according to the course of Equi-
ty decisions. And if (which is not the case) the Courts of our
Union had extended it to the assignee of the notes for the pur-
chase money, that not having been done by the British Courts,
we would be governed by the limitations put upon it in England.
This *doctrine* or rule has reference to the parties primarily, and
contemplates the relation of vendor and vendee. So far as the

vendor is concerned, it is personal to him.   So far as the vendee is concerned, it has   been extended to his heirs, and those claiming under him, with notice of the  equity  with which he stands charged.

We are to inquire whether this right or priority  or lien, whatever it may be called, as recognized in the hands of  the vendor, is by him assignable.   If  it existed  by contract,  the  question would be different.   We have seen that it does not.   It is called an *incident* to the contract.  But it is  not  an  incident  which springs  out  of  the  contract—it  is  an  equity  which seems  to exist  independent  of  it.   Indeed the  contrary  inference  is deducible from the contract.   The  deed  is executed—the vendor divests himself voluntarily of the title to  the land—he takes the notes of the  purchaser, and  seems  to rely  upon  the  security which they afford for his  purchase money.   The solemnity and finality of the transaction thus closed, seems to negative the idea of anything reserved—of any *incident*.  At law, the thing is concluded—no such  incident  can  be there  made  to  spring  out of it.  Equity, however, comes in  with the purpose of enforcing a natural equity, and arbitrarily makes  the lien  an  incident  to the  contract.   In this view of it, it cannot be assignable.  For it can  in  no proper sense be said to exist until it is  declared to exist by a decree in Chancery.   I know  that it is  held  to exist, *prima facie*, and the burden of  showing a  waiver lies upon  the vendee.   Yet,  it is  now well  settled  that what is or  is  not  a waiver, is  a matter to be  determined by the  Courts  upon  the facts  exhibited.   15 *Vesey*,  340.  Who, then, shall  say, in any case,  that  the  lien  exists  as  a  matter  of  positive  right until it is decreed to exist; and if it be dependent for its  entity on  a  judgment of a  Court,  how can it be negotiable?   That it does  not  exist, until a  decree  establishes it, see *Gilman vs. Brown et al.* 1  *Mason's R.* 221.   In that case, Judge *Story* says, speaking of the vendor's lien,  "it is, in short, a right which has no existence until it is  established by a decree of the Court in the particular case. "   If this be a correct view of it, and it be  still held assignable, then it must be negotiable as a possible, but not an existing lien.   I need not stop to  demonstrate how adverse

such a thing is to the well established rules of the law merchant, nor what confusion it would introduce into all the business circles of life into which it might enter. According to this view of it, how wise is not that limitation which treats the lien as a privilege or priority personal to the vendor. The manner in which it is made an incident to the contract of sale, to wit: by the judgment of a Court, suggests an obvious distinction between the vendor's lien .and a mortgage. It is argued, that the transfer of a note, secured by mortgage, carries with it the mortgage security, and why then should not the transfer of the note in this case carry with it the lien? The proposition is true, but the inference is not legitimate; because of the different nature of the lien. We have seen how that arises. The security of a note, for the payment of money by mortgage, arises by the act of the parties. It is agreed between them, that it shall be so secured. The mortgage is part and parcel of the contract. It is evidenced usually in writing; it is registered; the world has notice of its existence, and that it exists for the purpose of securing the particular debt. Very naturally, therefore, and very reasonably, when the note is assigned, the security goes with it. All parts of the contract go together. The mortgage is given with a view to its assignability; it is part of the contract, that it shall be assignable. Not so with the vendor's lien; for about that, the parties make no stipulation whatever. Essentially, therefore, are they different. The vendor's lien differs from an *equitable* mortgage. Take the case of the deposit of title deeds. There the security arises by implied contract. The deposit of the title deeds is made for the purpose of security. The lien arises by the consent or agreement of the parties. 1 *Bro. Ch. R.* 269, *Bett's note*, 1. 9 *Vesey*, 116, 117. 2 *Anst. R.* 427 *to* 438. 14 *Vesey*, 605. 17 *Ibid*, 228. 3 *M. & K.* 417. 3 *Y. & Coll.* 55.. 5 *Wheat.* 277.

I cannot believe, upon principle, that this lien is assignable. But if it were, it must be assigned specially. It does not follow the simple transfer of the notes. It is not an incident to them. It is clear to my mind, that the lien and the notes are separate and distinct. If I might so speak, there is no privity between

Wellborn and Duncan *vs.* Williams and others.

them; there is no dependence of the one upon the other. The notes are the evidence of the debt due, or to be paid for the land. They are proof that the purchaser binds his whole estate to their amount. They seem to affect the lien only so far as they are evidence that the purchase money is unpaid. When that is paid, the lien is extinguished, no matter how it was agreed to be paid. The distinctions already drawn, demonstrate the want of connection between the lien and the notes. If the lien attached to the notes, why not assert it upon them in a Court of Law? But that cannot be done; for all the authorities concur in this, that Courts of Equity alone have jurisdiction of the lien. The purchaser of the notes, as in this case, takes them upon the credit which they warrant upon their face. He is not disappointed in not realizing the lien. It is true, that if a note secured by mortgage is transferred, the transferee gets with it the mortgage, although ignorant of its existence at the time of the transfer. In fact the security exists; it belongs to the note. In the case of the lien, it does not necessarily exist, and if it does, it does not belong to the note. If the lien passes to the first transferee with the notes, it must follow them into whosesoever hands they may fall. They may circulate for years. Shall they draw after them, in an almost interminable course, a secret, invisible, undefined security? If they do, it must be greatly to the injury of unsuspecting purchasers and creditors of the vendee. It is settled, that if the vendor take the security of a third person, he waives the lien for the purchase money. If he indorses the note to an assignee, if the lien goes with it at all, it will go with it in that event, and the holder has the security of the note, the indorsement and the lien. He is therefore entitled to the lien, under circumstances in which the vendor himself would not be entitled to it. This would be absurd. If indeed the vendor transfers the note with his indorsement, and is made liable thereon, and the lien existed originally in his favor, I have little doubt but that he could *then* assert it upon the vendee. The equity in that case would be as strong in his favor as it was primarily. *Ex parte Loring,* 2 *Rose's Ca.* 79. In *Gilman vs. Brown,* Judge *Story* passes condemnation upon this doctrine. The re-

mark he makes is an obiter, but the opinions of such a man however expressed, are entitled to confidence. Remarking upon the probability of the lien being waived in that case, he says, "The securities themselves were, from their negotiable nature, capable of being turned into cash, and in their transfer from hand to hand, *they could never have been supposed to draw after them, in favor of the holder, a lien on the land for payment.*" 1 *Mason's R.* 218.

In support of the position, that the vendor alone is entitled to this lien, as I understand the authority, it has been decided that if a third person covenant to pay a part of the purchase money to a person other than the vendor, such other person has no lien upon the land for such part of the purchase money, unless it be agreed that he shall have the lien. 3 *Sim. R.* 499. 1 *M. & K.* 297. 2 *Keene,* 81. In the United States, the weight of authority is against the plaintiff in error. In New York, in Maryland and in Ohio, it has been decided, that the vendor's lien cannot be enforced in favor of the assignee upon a transfer of the notes for the purchase money. 7 *Gill. & Johns.* 120. 1 *Bland. Ch. R.* 524. 1 *Paige's Ch. R.* 502. 1 & 2 *Ham. R.* 147. 3 *Sugden on Vendors,* 140, *note.* In Tennessee and Kentucky, the question has been ruled the other way. See *Eskridge vs. McClare,* 2 *Yerg.* 847. 4 *Litt.* 289. 5 *Monroe,* 287. 2 *Dana,* 99. 4 *Litt.* 317. If the vendor seeks to enforce his lien upon the assets of the vendee to the injury of other creditors, they may have the assets marshaled, and compel him to go upon the land. This is done upon the familiar principle, that one having a claim upon two funds, may, at the instance of him who has a claim upon one of them, be forced to seek satisfaction out of that fund upon which the latter creditor has no claim, in order that both may be paid. This rule makes nothing in favor of the enforcement of this lien in favor of third persons. It is not the enforcement of the lien in favor of the creditors in whose favor the assets are marshaled, but a control which equity takes over the manner in which the *vendor himself* shall enforce it. Neither does the rule, that purchasers from the vendee who have paid the lien may be substituted to

the place of the vendor, as against other claimants on the estate under the vendor, avail anything for the plaintiff in error. They do not claim the lien from the vendor, nor are they substituted upon the score of being assignees of the lien; but upon the ground, that they stand in relation to vendor and vendee, as sureties for the latter to the former, and having paid the debt, are, in equity, subrogated to the rights of the creditor as against their principal.

The Courts do not favor secret liens. The vendor's is a secret, invisible, unregistered lien. We are wholly disinclined to extend it to the the assignees of the notes, or in any way to break over the limits within which it is now happily confined. Being secret, it is opposed to the policy of all our own legislation upon the subject of liens.

Let the judgment be affirmed.