No. 30.—WILEY WEBB, plaintiff in error *vs.* EDWARD A. ROBINSON, *et al.* defendants in error.

[1.] It is error to lay down a correct qualification to a rule of Law, when there is no evidence touching the subject-matter of the qualification.

[2.] It is not the duty of the Court upon request of counsel to go through a bill and answer pointing out what parts of the answer are, and what are not responsive : but when counsel make a point to the Court as to the responsive character of any portion of the answer, it is the duty of the Court and its conclusive province, to determine whether it is or not.

[3.] The presiding Judge instructed the jury that the vendor's lien was good against purchasers with notice *if the jury were satisfied that the purchaser had it in his power to revoke the trade without injury to himself and inequitably held on to the bargain : Held*, that the qualification as to revoking the trade is error.

[4.] The vendor's equity does not accompany a transfer of the notes given for the purchase money.

[5.] If A. sell lands to B. taking his note for the purchase money, and afterwards, B. sells the same land to C., taking his note for the purchase money, and afterwards A. takes in payment of B's. note to him, C's. note to B., A. has no lien as vendor upon the land.

[6.] Creditors who become such without notice of a vendor's lien and those who claim under such creditors are protected against the vendor's lien.

In Equity, from Macon Superior Court.    Tried before Judge POWERS, March Term, 1853.

This was a bill filed by Wiley Webb against Edward A. Robinson, Osborn Wiggins, John J. Chewning and Anderson Stembridge.

The object of the bill was to enforce the lien of Webb as vendor, on a certain lot of land, which he sold to Stembridge, for one thousand dollars, taking Stembridge's note therefor ; and one of which notes for two hundred dollars, was still in his hands unpaid.    The land had been sold by the Sheriff on a *fi. fa.* of the said Chewning against Stembridge, and purchased by Chewning, who sold it to Robinson, and he to Wiggins.    The bill alleged that these various purchasers had notice of his lien and that Stembridge was insolvent.

The answers of defendants admitted the facts charged, and further stated, that Webb had bought the land originally from Chewning at eight hundred dollars, for which sum he had given his notes; and that after he sold to Stembridge, he had induced Chewning, who still held his notes, to exchange them with him for eight hundred dollars of Stembridge's notes, given as aforesaid for the land, alleging, as the answer of Chewning stated, that Stembridge was entirely good for his debts, and that if he did not pay the notes that he (Webb) would.    These notes were the foundation of the *fi. fa.* of Chewning *vs.* Stembridge, under which the Sheriff had sold the land in question.

The answer of Chewning further stated that complainant, since he sold the land to Stembridge, had rented it back from him for a year; and the rent was worth two hundred and fifty dollars, which complainant had never paid.

The cause came on for trial March Term, 1853, and evidence on both sides was offered to the jury substantially sustaining the allegations above stated, except that there was no evidence, save the answer of defendant, as to the representations made by Webb to Chewning, in the exchange of notes.    The testimony being closed, the complainant's, counsel requested the Court to charge the jury as follows :

1st. That any portion of the purchase money is a lien upon the land, and is available against all subsequent purchasers, having notice of the fact.

2nd. That a notice to any purchaser of the lien prior to the payment of the purchase money by him will bind him.

3rd. That if the transfer of the notes of Stembridge, by Webb to Chewning, was fair and *bona fide*, and it is not to be presumed such transfer was fraudulent, but if there was fraud, it was to be proven ; then this does not destroy Webb's lien for the payment of the balance of the purchase money due from Stembridge to him, especially if Chewning, at the time of the transfer, had notice of the existence of Webb's lien, although Chewning may have previously sold the land to Webb, and Stembridge's notes may have been transferred in substitution of notes given by Webb to Chewning for the purchase money.

4th. That the answers of the defendants are only evidence for them where they are directly responsive to the allegations and charges in the bill, or immediately connected therewith, or springing thereout, or necessarily explanatory thereof ; and that all those parts of defendants answers, relating to the sale of land from Chewning to Webb ; the transfer of Stembridge's notes by Webb to Chewning ; and the circumstances therewith connected ; the renting of land by Webb from Stembridge ; and the payment of notes by rent, were not responsive, and not evidence, unless sustained by proof.

5th. That where the defendant fails to answer, or answers evasively, statements and charges in the bill ; a knowledge of which they are charged with having, or which they may be fairly presumed to have, such failure to answer, or such evasive answers, is to be taken as an admission by the defendants of the truth of such statement or charge.

The Court charged as to the first ground or request,

That the rule of Law was correctly laid down by counsel for complainant ; that if any portion of the purchase money remained unpaid, this sum constituted a lien upon the land (provided security was not otherwise taken, and the lien thereby

relinquished) and this lien is followed into the hands of subsequent purchasers who had notice thereof before their purchase.

To the second request,

The Court declined to charge in the language of this request. This rule might be sustained, if the jury were satisfied from the evidence, that the purchaser had it in his power to revoke the trade without injury to himself, and inequitably held on to the bargain. But at all events, it did not apply in this case; all parties admitting, with perhaps the exception of Wiggins, that they had notice.

To the third request,

The Court declined to charge as requested. But charged the jury that this claim, and others of like character, was unknown to the Common Law, and could alone be set up and sustained in Equity; it was purely of an Equitable nature, and the Court apprehended, that to arrive at a correct conclusion, the whole Equity of the case should be taken into consideration.

The Equity on the side of Chewning as well as on the side of Webb, if the jury believed from the evidence, that Webb purchased the whole tract for $800, from Chewning, and gave him his notes therefor, and then sold the same, or a portion thereof, to Stembridge for $1000, and out of these notes or a portion of them, paid Chewning, or took up his own notes from Chewning, with these, then in the opinion of the Court, the equities are equal. Chewning had a lien for his amount of $800, equal in dignity, equity and justice to Webb's lien for $200. Then, if Chewning pushed forward and obtained his judgments first against Stembridge, he might add his legal advantage to his equal equity, and rightfully sell the land. But if the jury believed, from the evidence, that Webb, in making the exchange with Chewning of Stembridge's notes for his own, made false and fraudulent misrepresentation as to the solvency and condition of Stembridge, every vestige of his equity was gone; for into this Court, he must come, " with clean hands." In fact, whether he made any positively false misrepresentations or not, if the jury believed that

Stembridge was wholly insolvent, and Webb knew it, the transfer of Stembridge's notes for his own to Chewning, was not a payment of his indebtedness to Chewning—and under that state of facts, the Equity was with Chewning first to be paid his purchase price. But they must be satisfied that fraud existed from the evidence, for they could not presume its existence without satisfactory proof.

To the fourth request,

The Court charged as requested as to the effect of the answers as evidence; and instructed the jury to look into the bill and answers, and if the answers set up new matter, and were not responsive to charges and allegations made in the bill, they were not evidence of themselves, unless otherwise supported by proof. But the Court declined to look into the answers, and charge the jury what particular fact should be received and what rejected; leaving to the jury, under the rule of Law, to ascertain the facts.

To the fifth request,

The Court declined to charge, as no instance of failure, or evasion had been pointed out to the Court, or complained of until this request; and if such fact existed, complainant ought to have excepted to the answer and obtained a satisfactory response.

The jury retired and found a verdict for the defendant, with cost of suit.

And counsel for complainant excepts to said charges and refusals to charge on the part of the Court, and assigns error therein.

HUNTER, S. & R. P. HALL, for plaintiff in error.

MILLER, for defendant.

Brief submitted by STEPHEN F. MILLER, counsel for the defendants in error:

1. All the property of the defendant is bound from the

rendition of judgment. *Cobb's Dig.* 494. *Kollock vs Jackson*, 5 *Ga.* 153.

2. The vendor's lien is not available against creditors. *Baley vs. Greenleaf*, 5 *Peters. Cond. Rep.* 229. *Johnson vs. Cowthorm*, 1 *Dev. & Battle, Eq. Rep.* 32. *Wilkerson vs. Bren*, 10 *Ga.* 117.

3. The vendor's lien has no existence until it is established by a decree of the Court, in the particular case. *Gilman vs. Brown*, 1 *Mason's Rep.* 221. *Willborn vs. Williams*, 9 *Ga. Rep.* 91.

4. The holder of a promissory note, in transferring it for value, is bound by his representations, and also for concealing facts impairing the security. In such a case, a Court of Equity will afford relief. *Story's Eq.* §191. *Winter vs. Bulloch*, 6 *Ga. Rep.* 233.

5. Matter in the answer of a defendant, showing the whole transaction, of which the bill sets forth only a part, is relevant to the issue. *Van Ransalier vs. Brice*, 4 *Paige*, 174. 3 *N. Y. Eq. Dig. p.* 19 §4. *Story's Eq. Plead.* §857. He who seeks equity must do equity. *Story's Eq.* §64. *c.* Where there is equal equity, the Law must prevail. *Story's Eq.* §64, *c.* 1 7, *R.* 214.

6. A writ of Error does not lie to error of *fact* in the decree of the jury. *Beall vs. Rowell*, 4 *Ga.* 223.

7. A debt is not extinguished by the delivery of the note of a third person, unless the note was accepted as payment. *Wylley vs. Collins*, 9 *Ga.* 223.

8. Exceptions to an answer in Equity must be filed before trial, or they will not be heard by the Court.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The rule as to the *vendor's lien* which the Court gave to the jury in the beginning of his charge, was certainly the true rule. That the vendor may waive it by taking security for the purchase money is true. But no evidence whatever was presented to the jury about security. Whether he did or did

not take security is not mooted in this record. The proof is that *Webb* sold the land and took the purchaser's note for the price. So far as the proof goes, it is manifest that he had no security. To instruct the jury that his lien was not good if he took security, was by implication an assumption that there was evidence to this point—it was calculated to divest their minds from the issues really made and therefore error.

[2.] We have held that it is the duty of the Court to determine, as a question of Law, what parts of the answer are responsive to the bill; and as such to be regarded as evidence for the defendant. We adhere to this ruling; but this case makes it necessary to explain what we did in fact decide. Generally then the duty of the Court in this particular, is discharged when it instructs the jury that only so much of the answer is to be regarded as evidence, as is responsive to the allegations of the bill; and lays down the rule as to what is a responsive answer. It is not the duty of the Court upon request of counsel, to take the bill and answer, and going through both, designate in detail what is responsive. But when counsel choose to do so, they may make a point to the Court as to the responsive character of any particular part of the answer; and when made, it is the business of the Court to decide it and instruct the jury accordingly. There is no impracticability in this rule. Self-respect will restrain counsel from making unnecessary points upon the answer; and when real doubts exist whether an answer be responsive, the doubts are for the solution of the Court, and not the jury. The request of counsel in this case, that the Court instruct the jury what parts of the answer were responsive to the bill, was too general, and the Court did not err in declining to comply.

[3.] The presiding Judge instructed the jury that the vendor's lien was good against purchasers with notice, " If the jury were satisfied that the purchaser had it in his power to revoke the trade, without injury to himself, and inequitably held on to the bargain." We do not recognise this qualification. The vendor's lien is an equitable security for the purchase money. It grows out of the principle of natural equity that A. shall

not acquire the property of B. without paying for it. The deed passes the legal title, and the purchaser holds the property as *trustee* for the vendor until the stipulated price is paid ; and a Court of Equity will compel the execution of the trust. He who buys with notice of the *vendor's lien,* takes the land subject to the trust, just as it was in the hands of the first purchaser. This brief exposition of the nature of this lien, demonstrates that its enforcement upon a second, or any other purchaser, does not depend upon the condition stated by the Court. It does not depend upon the purchaser having it in his power to revoke the trade without injury to himself. If he has notice, he buys with his eyes open—he takes the hazard of the game and has no right to complain. ( *Wellborne & Duncan vs. Williams,* 9 *Ga.* 86.)

[4.] It seems that *Webb,* the complainant, bought the land in question form Chewning and gave his notes for the purchase money, and he sold to Stembridge, taking his notes for the purchase money. Webb and Chewning exchanged notes ; Chewning taking the note which Webb held upon Stembridge for a part of the purchase money, in payment of a note which he held upon Webb for an equal amount ; also given to him in part for the purchase money. Chewning sued Stembridge on the note which he got from Webb, and after getting a judgement levied upon the land as the property of Stembridge, and it being brought to sale, became the purchaser, and took the Sheriff's deed for it. Chewning then sold to Anderson, and Anderson to Wiggins. Webb filed his bill making Stembridge, Chewning, Anderson and Wiggins parties defendants, to enforce his lien upon the land for $200 of purchase money, still due from Stembridge to him—averring the insolvency of Stembridge, and notice to all the defendants of his equity as vendor. The notice to all was proven on the trial.

[5.] Upon this case, the Court further instructed the jury, that as this was a proceeding in Equity, all the equities between the parties were to be considered, and that " If the jury believed from the evidence, that Webb purchased the whole tract from Chewning for $800, and gave him his note therefor,

and then sold the same, or a portion thereof, to Stembridge for $1000, taking his notes therefor, and out of these notes, or a portion of them, paid Chewning, or took up his own notes from Chewning with these; then, in the opinion of the Court, the equities are equal. Chewning had a lien for his amount of $800, equal in dignity, equity and justice, to Webb's lien for $200. Then if Chewning pushed forward and obtained his judgment first against Stembridge, he might add his equal equity to his legal advantage and rightfully sell the land." We think that the whole of this charge was wrong. Chewning had no equity in this land of any kind. He could have an equity only, First as vendor of the land, to Webb. But that he could not have, because by the exchange of notes, Webb's indebtedness to him as purchaser was extinguished. Webb's note for the balance due him was given up and cancelled. The vendor's lien exists only for the payment of the purchase money. If indeed, by fraudulent representations or a suppression of the truth on the part of Webb, as to the solvency of Stembridge, he has a right of action, that is a different affair. The Courts are open to him in the use of the proper legal remedy; but for such a claim against Webb, equity gives him no lien on the land in question. Or secondly, his lien was founded on the transfer of Webb's equity as vendor—along with the note of Stembridge. But that is not with us an open question: we have decided that the lien does not accompany a transfer of the notes given for the purchase money. (*Wellborn and Duncan vs. Williams*, 9 *Ga. R.* 86.)

We shall see in the further progress of this discussion, that Chewning gained nothing by pushing on, in the language of the Court, and getting a judgment. It is a sound proposition, that if two have equal equities, and one has also a legal advantage, he will prevail on his legal right. This principle however, has no application to the case; because as I have undertaken to show, Chewning has no equity, much less an equal equity, with Webb in this land.

[6.] Counsel for the defendants in error insists that Chewning, being a judgment creditor of Stembridge, the purchaser from

Wiley Webb *vs.* Edward A. Robinson *et al.*

the complainant, the lien of the complainant yields to the lien of his judgment. Thus we are invoked for the first time to determine how far creditors are to be protected against the vendor's equity. This is, without doubt, an important question, and one upon which, in England, there are no adjudications, and upon which, in our States, the decisions are so conflicting as to afford no safe guidance. Left uncontrolled by any rule of the Common Law, and equally free from statutory control, we decide it upon principle.

In England it prevails against the vendee, his heirs—volunteers under him—against purchasers with notice and assignees in bankruptcy. It is not. carried farther by any decisions there. I think that there is no case in the English books, in which the question as to the rights of creditors, was made and decided. Mr. Sugden, it is true, places creditors, claiming under a conveyance, in the same situation with creditors under a commission in bankruptcy. His text is in the following words : " Creditors claiming under a conveyance from the purchaser, are bound in like manner as assignees, because they stand in the same situation as creditors under a commission." (*Sugden on Vendors,* 3 *vol. p.* 142. 6 *Am. edition.*) According to Mr. Sugden then, the lien prevails against creditors even without notice, who hold a conveyance from the purchaser; for it prevails against assignees under a commission, with or without notice.

This is the authority of a name as eminent as any among the Law writers of his day; but it is not the authority of Westminster Hall or of the British Chancery. Several cases are referred to by Mr. Sugden in support of his text. The authority of this *dictum* was shaken ; indeed, demolished by the Supreme Court of the United States, in *Bailey vs. ˙ Greenleaf.* (7. *Wheat.,* 46.) Ch. J. Marshall in the opinion in that cause, reviews it with his incomparable strength of reasoning and accuracy of learning, and demonstrates that it has no foundation in principle or in authority. According to his review of the cases in England and America, there was in his day no single case, here or there, to sustain the lien against creditors. And

VOL. XIV. 29

up to this time, I have found no case in England in which the rights of *bona fide* creditors have been held to yield to it; except, when they claim as assignees in bankruptcy. The error of this learned and accurate writer, is found in assimilating the condition of creditors, holding directly under the vendee, to that of creditors who hold under commissioners. Their conditions are different. The latter come in by act of Law. The assignment of commissioners passes the rights of the bankrupt, "Precisely in the same plight and condition that he possessed them." The estate of the bankrupt passes encumbered with the vendor's equity; precisely as it was encumbered in his hands. For this reason, the rights of the creditors under an assignment are postponed to the vendor's equity. (*Sugden*, 6th *Am. Edit.* 3 *vol. pp.* 141, 142. 1 *Bro. C. C.* 420. 6 *Vesey Jun.* 9 5 *note* (*a.*) 12 *Ibid* 346. 9 *Ibid* 300. 2 *Ves. & Bea.* 309.)

The former occupy the position of purchasers in Equity. (7 *Wheat*, 46. *Mitford vs. Mitford* 9th *Vesey Jun.*)

From these considerations, we feel at liberty to say that we are not constrained by British authority, to extend the vendor's equity over the rights of creditors. In this country the decisions are variant. The Supreme Court of the United States, in *Bailey vs. Greenleaf*, refused to enforce it against antecedent creditors, holding a conveyance from the vendee. That was a conveyance of the estate to trustees for the payment of creditors. Ch. J. Marshall, however, insists with great force of argument, that all creditors ought to be protected; and his decision and reasoning received the sanction of the next greatest legal mind known to our annals: Ch. J. Kent. (4 *Kent's Com.* 154 *note a.*) That case has been followed in *Roberts vs. Silasbury* 3 *Gill & Johns* 425. *In Garm. vs. Chester*, 5 *Yerger's Tenn. Reps'* 205. *In Moore et al. vs. Holcomb et al.* 3 *Leigh* 597, 600.) But was condemned in *Swelns vs. Williams*, 3 *Wheat* 493, and qualified by the *Vice Chanceller in Shirley vs. The Sugar Refinery*, 2 *Edw. V. Ch. Reps.* 511.

In some of the States the doctrine of the English Chancery,

that after an absolute conveyance, the vendor may still hold a lien upon the property to secure the purchase money, has been rejected altogether. As *Pennsylvania*, (7 *Serg. & Rawl*, 64. *Idem*. 286. 3 *Wheat*, 19. 3 *Barr*. 72, 78.) *North Carolina*, (*Womble vs. Battle*, 3 *Iredells, Equity Reps*. 182.) *South Carolina*, (*Wray's Reps. vs. Comp. Gen. and others* 2 *Dessausure*, 509, 520, *and Massachusetts*, ( 1 *Mason*, 192, 219.) And in those States where it has been recognized, it has received but little favor; indeed, it has been considered as unsound in principle and subversive of that policy, so universally prevalent in this country, which sets its face as a flint against secret liens.

I proceed to say, that it has been held not to prevail against a *bona fide* mortgagee without notice, upon the ground that he is regarded in Equity as a purchaser. (*Duval vs. Bibb*, 4 *H. & Munf*. 113, 120. *Wood vs. Bank of Kentucky 5th Monroe*, 194, 195. *Clarke vs. Hunt*, 3 *J. J. Marshall*, 553, 557. 5 *Yerger*, 205, 209.)

In Mississippi, it was held that it cannot prevail against creditors claiming under a deed of trust made for their benefit. (5 *Smedes & Mash*. 702, 710.)

So also, it has been decided, that it is subordinate to the rights of judgment creditors and purchasers at their sales. (*Johnson vs. Cawthorn*, 1 *Dev. & Batte*, 32, 35. *Harper vs. Williams, Idem*. 379. *Roberts vs. Rose et al.* 2 *Humph*. 145, 147. *Aldridge vs. Dunn*, 7 *Blackf*. 249, 250.)

From these recitals it is manifest first, that in the United States, the tendency of the authorities is in favor of purchasers; and that secondly, there is no uniform rule as to the rights of creditors against the lien to be derived from the American books. In this condition of things, we are to make a rule for the guidance of our Courts, until such time as the Legislature may see fit to take the matter in hand. And in so doing, we are influenced by the principles upon which we understand the established doctrine in England is based, and by the policy of our own registration Laws. As this Court is bound by the settled doctrine of the British Chancery Courts, we hold our-

selves bound by the principles upon which that doctrine goes, in cases where those Courts furnish no precedents. More especially, when those principles are in harmony with our own Legislation. Unquestionably then, our own Statutes abhor and repudiate secret liens. Liens which they allow, are to be made public, that the world may be warned. Mortgages, mechanic's liens and judgments, are to be recorded. Titles to land are also to be recorded. The policy of our registry laws is this, to wit: he who owns real estate, and he who holds securities for debt, must give notice of the fact, that purchasers may not levy in the dark, and that one neighbor may not be induced to credit another, upon the faith of property in possession, which in fact, is not liable to redeem the credit. If there is one legal policy more fixed than another in the States of the Union, it is that of protection to honest creditors, against fraudulent alienations and secret incumbrances. The doctrine of the vendor's lien, so far as we have extended it, and that is no further than it goes in England, *does not* conflict with, or weaken this policy. The purchaser from the vendee is not protected only when he has notice of the equitable incumbrance—if he is without notice, then he is protected. Notice, therefore, is the policy of the Law of the vendor's lien, as well as of the Statutes of Georgia. The policy of notice is not applicable to a case between the original vendor, and the primary vendee; and is not, therefore, applicable to a case between the former, and those who by operation of Law, occupy the place of the latter, as heirs—volunteers and creditors in bankruptcy. These last named have no equity, because they pay no value—and therein they widely differ from purchasers. They pay value, and if they pay value without notice, their equity is stronger than that of the vendor. He may take a specific lien if he chooses, and give by registration, notice of it; and if he omits to do it, his want of security is his own fault; and he must yield to the purchaser, who without notice, buys land to which he has made titles, and which titles are upon record. If A. buys land of B. which he knows is not paid for, and at the same time knows that the Law gives a lien upon

it for the unpaid purchase money ; he, upon principles of natural justice, has no title until that unpaid purchase money is settled. The mind accedes to the equity of that proposition, without doubt or misgiving. So it is equally clear that if A. sells land to B. and makes to him a title which is promulgated by a record of the deed, and C., buys of B., paying his money therefor, without knowledge of the fact that B. has not paid for it, C's. title to the land in Equity is stronger than A's. claim for his purchase money unpaid. Upon these principles, we determine that creditors are entitled to protection. We place them upon the footing of purchasers, and we say that creditors who become such, without notice of the vendor's lien, are not in Equity postponed to the vendor. *Prima facie*, the creditor is to be preferred ; and to establish his lien, it is necessary that the vendor prove that the creditor's debt was contracted with notice of it: as a necessary consequence, those claiming under creditors will be protected ; as for example, purchasers at Sheriff sale, buying under a judgment founded on a debt contracted without notice. The application of this rule, in this case, will be easily made by all parties in interest. The justice and sound policy of it is vindicated in a few words by Ch. J. Marshall, thus : " To the world the vendee appears to hold the estate divested of any trust whatever, and credit· is given to him in the confidence that the property is his own in Equity as well as Law. A vendor relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is in some degree accessory to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien. It would seem inconsistent with the principles of Equity, and with the general spirit of our Laws, that such a lien should be set up in a Court of Chancery to the exclusion of *bona fide* creditors." (7 *Wheat,* 46.)

The counsel (*Major Miller*) for the defendants in error, made the point that the Statutory lien of Chewning's judgment would, aside from any equitable consideration, prevail over Webb's equity. He argues that by force of our Law, which

makes all the property of the defendant liable to a judgment, the equitable lien of a vendor is set aside in favor of the judgment. What has already been said, is an answer to this position of the learned counsel. Our position is, that the protection of the creditor depends upon the circumstances under which the debt was contracted. If without notice, he is protected. Antecedent debts do not therefore belong to the protected class. Whilst this is stated as the general rule, it is not intended to be asserted that there can be no case where a conveyance to secure antecedent debts, accepted without notice, will stand against the vendor's equity. That point may for the present be left open. The principle upon which we rule as to creditors generally, also excludes the idea that the reduction of a debt into judgment, can make any difference. Nor do we think that our Statute repeals the equitable doctrine, that we have been considering. That is of force in Georgia, equally with our Statutes. There is no express repeal, and none by implication. It is the duty of the officers of the Law to give effect to both. The judgment lien is not intended to interfere with pre-existing liens, but takes effect only when the judgment is rendered. It has priority therefore only over subsequent legal liens.

Let the judgment be reversed.