## Case No. 10,975.

### In re PERDUE.

[2 N. B. R. 183 (Quarto, 67); [1] 2 West. Jur. 279.]

District Court, N. D. Georgia. 1868.

BANKRUPTCY—HOMESTEAD·EXEMPTION—VENDOR'S LIEN.

1. A sold B a certain quantity of land. receiving other land in part payment, and taking B's notes for the balance of the purchase money. A died and his executor sued on the notes and recovered judgment thereon. B was afterwards adjudged a bankrupt. A's executor, in proving the debt, asserted the vendor's lien; subsequently thereto the assignee exempted two hundred and ninety acres of the land in question. under the fourteenth section of the bankruptcy act [of 1841 (5 Stat. 448)]. *Held,* that the vendor's equitable lien should be upheld by a court of bankruptcy, and that the assignee erred in setting any of this property apart as exempt.

2. Ordered, that the land be sold by the assignee under the order and direction of the register, and that the proceeds of the sale be brought into court for distribution according to law.

In this case on the 24th of April, 1860, the vendor, Wm. L. Mitchell, now deceased, sold to the vendee, Lindsey Perdue, six hundred and forty acres of land, in Meriwether county, Georgia. for eight thousand eight hundred dollars, receiving in exchange, by way of payment therefor, another tract of land in said county, at the value and price of five thousand one hundred dollars, and taking notes for the balance of the purchase money, to wit: three thousand seven hundred dollars. Afterwards Mitchell died, and John A. Mitchell. being appointed his executor, sued Perdue in the Meriwether superior court, and recovered judgment for three thousand seven hundred and sixty dollars. In proving his debt in bankruptcy proceedings, subsequently taken, he asserted the vendor's lien and filed an exemplification of his judgment in the case. Subsequently thereto the assignee exempted two hundred and ninety acres of the land under the fourteenth section of the bankrupt act. Exceptions thereto were filed within twenty days. and notice was not given of the setting apart the exemption to bankrupt, or of assignee's report on that subject. But afterwards, Mitchell. soon after receiving information of the claim of exemption. filed his petition before the register, and prayed that the question of allowing or disallowing the vendor's lien and disposal of the land, and payment of said unpaid purchase money, be

certified to his honor, ERSKINE. J., for his decision and instructions. The register decided sustaining the act of the assignee disallowing the vendor's lien, and allowing the exemption. of two hundred and ninety acres of the land, including the homestead. These exceptions. and the record, except the agreement of the counsel, upon which the case was certified and the proof of the debt in which the lien was asserted, are now before the court for review and decision.      B. H. Bingham,
Solicitor for John A. Mitchell, Executor.

I agree to the above, and say that the law does not require the assignee to give notice that he has set apart to the bankrupt the exemption property.      John W. Powell,
Attorney for Lindsey Perdue.

ERSKINE, District Judge. Resting upon the foregoing statement of facts in the matter of Lindsey Derdue, a voluntary bankrupt, the court will pronounce its decision. The controversy is between the immediate parties to the contract of sales of the six hundred and forty acres of land, and not between the vendor and a remote party, as, for instance, a bona fide purchaser from the vendee, who bought the property and paid the purchase money without notice. The matter of the vendor's lien is involved in this case. and it has been elaborately argued. If it were absolutely essential to a determination of this question that a history of the peculiar principles inherent in, and which control the vendor's lien should be discussed, and time permitted me to do so (which it does not) I might, with judicial propriety, decline; for this has already been well done, not only by the supreme court of the nation (in Bayley v. Greenleaf, 7 Wheat. [20 U. S.] 46. See, also. Brown v. Gilman, 4 Wheat. [17 U. S.] 255; Thredgill v. Pintard, 12 How. [53 U. S.] 35) and by Story, J., in Gilman v. Brown [Case No. 5,441], but likewise by Nesbitt. J., in delivering the opinion of the supreme court of Georgia, Welborn v. Williams, 9 Ga. 86. and in Webb v. Robinson. 14 Ga. 216. In these last two cases this eminent judge has given a clear exposition of the doctrine of the vendor's lien, the incidents dependent upon it and the consequences which flow from it. At the time of the alienation of the land by Mitchell to Perdue, the vendor's lien for the unpaid purchase money was of force in this state, and there is no evidence whatever before me indicating that this lien was waived by taking security, or otherwise. In Bass v. Ware, 34 Ga. 386, it was ruled—WALKER, J., delivering the decision of the court—that the abrogation of the vendor's lien applies only to those liens created after the Code went into effect, which was subsequent to the sale of the land.

It was contended for the bankrupt that the vendor's lien could not exist against him, because the vendor received an exchange, by way of payment for the land. another tract of land, at the value or price of five thousand

---

[1] [Reprinted from 2. N. B. R. 183 (Quarto, 67), by permission.]

one hundred dollars, and three thousand seven hundred dollars in notes. These notes are now in judgment at the suit of the executor of the vendor, and remain unpaid. I cannot rule the point in favor of the bankrupt.

The sale was of six hundred and forty acres of land for eight thousand eight hundred dollars. A tract of land of the value of five thousand one hundred dollars was given as part payment, and the residue of the purchase money in notes. I can see no difference in principle, whether a part of the purchase money was paid in cash or in land at an agreed price; either goes to extinguish the debt, pro tanto. There is, nevertheless. some analogy between this proposition and the case of an exchange of land for other land of equal agreed value. In the former case, the vendor's lien, or equitable mortgage, as it has been called, attaches on the delivery of the conveyance, binding the vendee, who becomes a trustee for the vendor for the unpaid purchase money; it not only exists against the vendee, but his heirs and volunteers and all other purchasers from him with notice of the existence of the vendor's equity. The lien will also prevail against assignee under the bankrupt law, and against the claim of dower by the wife of the purchaser, unless there be a positive law to the contrary. 2 Story, Eq. Jur. §§ 1227, 1228; 4 Kent, Comm. 151; 9 Ga. 86; 14 Ga. 210; Fisher v. Johnson, 5 Ind. 492. In the latter case, that of an exchange, the exchange must be a mutual grant of equal interests in land, the one in consideration of the other. 2 Bl. Comm. 323; Co. Litt. § 62. It is said, however, that an exchange in the United States does not differ from bargain and sale. 2 Bouv. Just. note, 2055.

The assignee set apart two hundred and ninety, of the six hundred and forty acres, to the bankrupt, as exempted under the provisions of the fourteenth section of the bankrupt law. On the part of the executor of the vendor, this allotment by the assignee, which was approved by register McKinley, is now sought to be set aside, for the reason that the purchase money for the land has not been paid, while on the side of the bankrupt, it is insisted that the assignment of the two hundred and ninety acres was legal. The general assembly of the state of Georgia, in December, 1843, passed a statute exempting fifty acres of land from levy and sale, under any judgment, order or decree of any court in this state, founded on any contract made after the first of January, 1844, "except the same shall be for the purchase money of said land, for the payment of which said land shall be bound." Cobb, Dig. 390. And such, I apprehend, is the law, on general principles of equity, without positive enactment. This statute was in force on the 24th of April, 1860. the date of the sale, and so continued until the abrogation of the vendor's lien by the Code. The saving or reservation just quoted was omitted from the Code, obviously, because when the vendor's lien was abrogated, this reservation of the land to the vendor for the unpaid purchase money, would be repugnant to the repeal of the equitable lien by the Code. But the Code did not intend to annul the reservation in the law of 1843 so as to act retrospectively; for to do so would be an attempt to impair the obligation of contracts. The statutory reservation was an incident, indeed a part of the contract of sale. And the seventh section of the Code. itself provides against its violation. "Laws prescribe only for the future." And when the vendor has not waived his equitable lien, this court would not, either in justice or in morals, be warranted in allowing the vendor bankrupt to have dominion over and enjoy an estate in land which he has never paid for. The vendor's lien must prevail. I do not think that congress intended that the bankrupt law should override cases of this nature.

It appears from the statement agreed on by counsel, that it was after the asserting of the vendor's lien and filing of the exemplification of the judgment obtained for the unpaid purchase money, that the assignee exempted the two hundred and ninety acres. But it was argued that exceptions to this act of the assignee must be taken within twenty days next after the allotment of the land to the bankrupt, and that the law does not require the assignee to give notice that the land was set apart; and order nineteen of the general orders in bankruptcy, promulgated by the supreme court of the United States is relied on. This order, after speaking of the duty of the assignee to set off articles to the bankrupt, according to the provisions of the fourteenth section, giving the estimated value of each article, concludes as follows: "And any creditor may take exceptions to the determination of the assignee within twenty days after the filing of the report." Looking to the general intent and scope of the bankrupt law, and to order nineteen. I am of the opinion that the supreme court did not mean that the auxiliary "may," as here used, is to be taken in an imperative sense. On the contrary, it seems, that the supreme court intend to leave a discretion with the district and circuit courts—to permit them to repair accidents, correct mistakes and prevent frauds. No good reason has been given. or authority invoked, going to show that the law does not require the assignee to give notice that exempted property has been set apart, therefore I cannot question the correctness of order nineteen. And upon the question of time. it may not be foreign to remark that the objections taken by the vendor's executor go to the title, and not to the quantity of the land set apart.

It is ordered and adjudged by the court here, that the decision of the register be reversed. and that the actings and doings of the assignee in the premises be, and they are

hereby set aside, and that the said six hundred and forty acres of land, with the rights and appurtenances thereunto belonging, be sold by the assignee under the order and direction of the register, after due and legal public notice, and the proceeds of such sale be brought into the registry of the court for distribution according to law.